666 So.2d 784 (1995)
Bill JOHNSON, Jr.
v.
STATE of Mississippi.
No. 92-KA-00732-SCT.
Supreme Court of Mississippi.
December 7, 1995.
*789 Robert B. Helfrich, Hattiesburg, for appellant.
Michael C. Moore, Attorney General, Jackson, Jeffrey A. Klingfuss, Sp. Ass't Attorney General, Jackson, for appellee.
Before PRATHER, P.J., and PITTMAN and JAMES L. ROBERTS, Jr., JJ.
PITTMAN, Justice, for the Court:
Dyralene Leggett met Bill Johnson, Jr., at an Alcoholics Anonymous meeting in Jackson, Mississippi. They became very good friends. Johnson and Dyralene felt that they would like to get married. The two were having sexual relations during this time. Dyralene was not having sexual relations with anyone else.
In April of 1990, Johnson visited Dyralene at her home in Hattiesburg. At that time, Dyralene had four children living with her  Nekesia, a sixteen-year-old female, Mario, a thirteen-year-old male, Brenda, a seven-year-old female, and Terri, a six-year-old female.
During Johnson's visit, Dyralene heard that he had been looking for the health department. She confronted him with this, and he told her he felt that he had gonorrhea or syphilis.
The next morning after Dyralene confronted Johnson, Johnson and Dyralene went to the health department. On April 27, 1990, Edward Fore, a disease investigator at the State Department of Health in Hattiesburg, took a culture from Bill Johnson, Jr., and sent it to the Jackson Lab for testing. The results of the tests were positive for gonorrhea. The type of gonorrhea was neisseria gonorrhea. On the same day, a culture was also taken from Dyralene Leggett and was sent to the Jackson Lab for testing. The results were positive for neisseria gonorrhea.
After the two had received the tests results, they had words about where Johnson had gotten gonorrhea, and Johnson left Dyralene's home on April 30. During his stay *790 at Dyralene's house, Johnson had an opportunity to be alone with Dyralene's daughter Terri one day when Dyralene was at work and the children did not go to school. When Dyralene returned home, she noticed that Terri looked like she had been crying. According to the principal at Terri's school, Terri missed school on April 25, 1990. During the first week of May 1990, Dyralene took Terri to the doctor because she had been complaining about her pubic area. Dr. Glenn Campbell, a family practitioner at the Petal Family Clinic in Petal, Mississippi, treated Terri. Terri's mother told Dr. Campbell that Terri had a rising or abscess on her bottom.
Dr. Campbell examined Terri, and determined that she had a very purulent vaginal infection. She had a very overwhelming, odorous discharge which is abnormal for anyone, even an adult. Although a gynecological examination of a child is usually very difficult because the area being examined is very small, Dr. Campbell found Terri to be very cooperative.
Dr. Campbell testified that it was very obvious to him that the girl had had sexual intercourse. The vaginal area was very large unlike the typical area of a six-year-old. Because there were no bleeding, raw areas, Dr. Campbell believed the sexual intercourse had taken place a few days or a week or so before the examination. He testified his findings were consistent with something like that happening to the child between April 22 and April 30, and in fact, Terri's mother said the child had had some type of infection for a week before coming to the office. The incubation period for gonorrhea is a few days to a week or two weeks.
Based on his experience, Dr. Campbell thought the discharge looked like gonorrhea. He did a culture for gonorrhea and sent the culture to the state lab. He also looked at it under a microscope, and the bacteria he observed was characteristic of gonorrhea. The test results from the state lab showed the gonorrhea type to be neisseria gonorrhea. The only way that the gonorrhea could have been transmitted to Terri was by sexual penetration.
Following the examination, Dr. Campbell told Terri's mother and Terri that he felt the girl had been sexually active and that someone had abused her. The two were not able to come up with an answer as to who could have abused the child. Dr. Campbell began treating Terri for gonorrhea at that time. He notified the Welfare Department on May 17, when he received the gonorrhea results.
Dr. Campbell performed a follow-up examination of Terri on May 21. During this exam, the child was upset. There was almost no discharge at this time, and the vaginal area was not as red. During this visit, Terri told Dr. Campbell that Bill was the one who had sexual intercourse with her. Terri's sister, who accompanied Terri, also said Bill did it.
Terri testified that Johnson got on top of her during his stay at her house. She said he hurt her on her private parts. She said she was asleep, and he got on top of her. She said she kicked him to get him to stop.
Joyce Wilkes, the owner of Doris' Cafe and Dyralene's employer, testified that Dyralene had asked her to talk to Terri about what had happened. When she talked to Terri, Terri told her that she was sleeping and the man that was in the house with them, Johnson, got on the bed with her. She started crying because it hurt, and Johnson told her to be quiet and not to wake her sister.
Angie Ruffin, a social worker with the Child Protection Service Division of the Forrest County Department of Human Services, talked with Terri in May of 1990. Terri told Ruffin that Bill had come into her room and described what he had done to her. Ruffin felt that it was unlikely Terri would have related what she did to Ruffin incorrectly, considering the mannerisms that she used.
Johnson was indicted by the Forrest County Grand Jury on the charge of capital rape. He was tried on November 18 and 19, 1991. The jury returned a verdict finding the defendant guilty of capital rape. The court sentenced Johnson to life imprisonment. Johnson raises four issues on appeal.

*791 I. DID THE TRIAL COURT ERR BY NOT DISMISSING THE INDICTMENT FOR THE PROSECUTION'S FAILURE TO BRING THIS MATTER TO TRIAL WITHIN 270 DAYS?
On November 11, 1991, Johnson filed a Motion to Dismiss alleging that he had been deprived of his right to a speedy trial. The court held a hearing on the speedy trial motion prior to trial on November 18, 1991. In addition to the dates of matters recorded in the court's docket, Johnson's first attorney, Jeff Bradley, testified under oath as to pertinent dates and events not recorded in the docket. The following dates are relevant in analyzing Johnson's speedy trial rights:
10/05/90 Defendant arrested
10/08/90 Order entered appointing Jeff Bradley as defendant's attorney
11/14/90 Defendant indicted
11/28/90 Defendant arraigned and pled not guilty  District Attorney and the defendant request a continuance until next term of court
02/27/91 State placed case on docket for trial setting or plea but defendant's attorney thought it would be best to work out a deal with the State
08/91 Plea negotiations broke down and defendant's attorney, Jeff Bradley, filed a Motion to Withdraw
10/22/91 Order entered upon motion of the State setting trial date for November 4, 1991
11/11/91 Defendant files Motion to Dismiss for denial of defendant's right to a speedy trial and a Motion to Withdraw or in the Alternative for a Continuance because the defendant and his attorney, Robert Helfrich, were having problems
11/14/91 Nunc Pro Tunc Order Appointing Attorney entered appointing Robert Helfrich as defendant's attorney beginning in late August or the first week in September, 1991
11/14/91 Trial continued on request of defense attorney
11/18/91 Trial begins

I. Statutory Violation
Section 99-17-1 of the Mississippi Code governs a defendant's right to a statutory speedy trial. It provides that "[u]nless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned." In calculating the period of time between arraignment and trial, the arraignment date does not count but the trial date does as do the weekends unless the 270th day falls on a Sunday. Ross v. State, 605 So.2d 17, 24 (Miss. 1992).
The State bears the burden of showing good cause for delay if the record is silent as to the reasons. State v. Harrison, 648 So.2d 66, 68 (Miss. 1994). A generic continuance such as one granted for "good and sufficient cause" does not satisfy the requirements of section 99-17-1. McGee v. State, 608 So.2d 1129, 1130 (Miss. 1992). A continuance requested by the defendant is charged to the defense. Jasso v. State, 655 So.2d 30, 35 (Miss. 1995). Even where the record contains no indication that a written order of continuance was granted, the statutory clock may be tolled if the State and defendant orally agree to a continuance, the defendant agrees to enter plea negotiations, or the defense attorney fails to appear for trial because of a death in the family. Harrison, 648 So.2d at 69. Crowded dockets are good cause for a delay only if the court actually grants a continuance on this basis. Id.
Where the statutory rule is violated, the trial court must determine if the violation prejudiced the defendant's ability to defend against the charge and if the State deliberately engaged in oppressive conduct. If prejudice is present, the court must dismiss the proceeding and render. If prejudice is not present, the court must dismiss the case for possible reindictment. Jasso, 655 So.2d at 35 (citing Harrison, 648 So.2d at 71). There is no prejudice to the defendant if he is serving a sentence on unrelated charges. Winder v. State, 640 So.2d 893, 895 (Miss. 1994).
*792 Johnson was arraigned on November 28, 1990, and his trial began on November 18, 1991, a delay of 355 days. Two of the delays can be charged to Johnson for continuances requested by the defense. The first is the continuance agreed upon by the defendant and the State on November 28, 1990, to continue the case to the first day of the next term of court. The first day of the next term of court was the first Monday in January which was January 7, 1991. The delay for this continuance was 40 days. The second continuance attributable to Johnson was the continuance of trial from November 14, 1991, to November 18, 1991, a total of 4 days. Subtracting the 44 days attributable to the defendant's continuances from the total 355 day period leaves 311 days.
Also tolling the speedy trial clock is the period of time during which Johnson's first attorney, Jeff Bradley, was trying to work out a deal with the State. Although the record is not specific as to dates with regard to the plea bargaining process, Bradley testified that he was negotiating during the period from February 27, 1991, to late August or early September, when he withdrew as the defendant's attorney. Even giving Johnson the benefit of the doubt and assuming the plea negotiation process broke down at the beginning of August, the delay due to plea negotiations consisted of at least 154 days. Although Johnson denies that he ever told anyone at any time that he would take a plea, Bradley testified that he did not seek a trial for the defendant because he was trying to work out a deal with the State during the period in question. Subtracting 154 days from 311 days leaves a total of 157 days. Therefore, Johnson's statutory right to a speedy trial has not been violated.

II. Constitutional Violation
Where a defendant asserts a constitutional speedy trial violation, the Court must balance four factors in determining if the claim is justified. The factors are: 1) length of the delay, 2) reason for the delay, 3) whether defendant has timely asserted the right to a speedy trial, and 4) whether defendant has been prejudiced by the delay. Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). No single factor will be dispositive of the claim, but the Court must consider the totality of the circumstances, including any additional relevant circumstances beyond the four factors, in making that determination. McGhee v. State, 657 So.2d 799, 801-802 (Miss. 1995) (quoting State v. Magnusen, 646 So.2d 1275, 1278 (Miss. 1994)). The date of the defendant's arrest is the date the right to a speedy trial attaches. Thorson v. State, 653 So.2d 876, 889 (Miss. 1994).

a. Length of delay
This Court has held that a delay of eight months or more between arrest and trial is presumptively prejudicial. Thorson, 653 So.2d at 890; Spencer v. State, 592 So.2d 1382, 1387 (Miss. 1991). A delay which is presumptively prejudicial will not require reversal in and of itself but will require that the remaining factors be examined closely. Handley v. State, 574 So.2d 671, 676 (Miss. 1990). As the period of delay increases, the importance of this factor also increases. Magnusen, 646 So.2d at 1280. Where the delay is not long enough to be considered presumptively prejudicial, the Court does not need to examine the remaining factors. Spencer, 592 So.2d at 1387.
Johnson was arrested on October 5, 1990, and trial began on November 18, 1991. The total period of delay was 409 days, or 13 months. Such a delay is presumptively prejudicial and triggers an examination of the remaining factors. See, e.g., Giles v. State, 650 So.2d 846, 850-851 (Miss. 1995) (383-day delay was sufficient to proceed with the weighing of the remaining factors); Fleming v. State, 604 So.2d 280, 299 (Miss. 1992) (344-day delay raises a presumption of a constitutional violation of the right to speedy trial).

b. Reason for delay
A delay caused by the withdrawal of the defendant's attorney which entails allowing the new attorney a reasonable time to become familiar with the case and prepare for trial cannot be weighed against the State because it is beyond the State's control. Wiley v. State, 582 So.2d 1008, 1012 (Miss. 1991). This Court has held that delays caused by plea negotiations are for good cause and have *793 the effect of tolling the speedy trial clock although such negotiations should be substantiated by documentation. Taylor v. State, No. 90-DP-01346-SCT slip op. 8, ___ So.2d ___, ___ [1995 WL 571320] (Miss. Sept. 28, 1995). Delays due to changes in the defendant's attorneys and the defendant's reneging on a plea agreement weigh against the defendant. Wagner v. State, 624 So.2d 60, 64 (Miss. 1993).
Where a delay is caused by the defendant, the constitutional clock is tolled for that period of time. Jasso, 655 So.2d at 33; Spencer, 592 So.2d at 1387. The period of delay attributable to the defendant is subtracted from the total days of delay. Wiley, 582 So.2d at 1008.
The two continuances in the case can be subtracted from the total period of delay because Johnson agreed with or asked for the continuances. The total period of the two continuances is 44 days. This brings the total period of delay to 365 days. The period of time during which Johnson's first attorney was negotiating with the State must also be subtracted from the total period. Assuming the negotiations broke off at the beginning of August, a total of 154 days can be subtracted, leaving a total of 211 days, or approximately seven months.

c. Assertion of right by defendant
Although a defendant is not required to demand a speedy trial, his assertion of such a right will weigh more heavily in his favor under the Barker analysis. Magnusen, 646 So.2d at 1283; Perry v. State, 637 So.2d 871, 875 (Miss. 1994). A late filing by the defendant asserting his right is not fatal to the defendant's claim to a speedy trial. Giles, 650 So.2d at 851. Moreover, failure by the defendant to assert the right at all does not constitute a waiver of his right to a speedy trial. Jenkins v. State, 607 So.2d 1137, 1140 (Miss. 1992). Assertion of a right to a speedy trial need not be made in writing. State v. Ferguson, 576 So.2d 1252, 1254 (Miss. 1991).
On November 11, 1991, just three days prior to the trial date, Johnson filed a Motion to Dismiss for denial of defendant's right to a speedy trial. Although this late filing is not fatal to his claim, it weighs less heavily than would an earlier assertion of his right.

d. Prejudicial effect of the delay
The defendant may be prejudiced by the fact that he has been detained before trial, that he has suffered anxiety as a result of the delay, or that his defense has been impaired by the delay. Spencer, 592 So.2d at 1388. A defendant suffers no prejudice from detention when he is out on bail. Jasso, 655 So.2d at 34-35. Where incarceration is the only ground raised by the defendant as the basis for prejudice, reversal will generally not be required. Ross v. State, 605 So.2d 17, 23 (Miss. 1992). Anxiety is presumed from the mere fact of delay even where the defendant does not complain that he has suffered anxiety. Jasso, 655 So.2d at 35. Impairment of the defense may occur as a result of witnesses dying or disappearing or of loss of memory on the part of witnesses. Jaco v. State, 574 So.2d 625, 632 (Miss. 1990).
Johnson's claims of prejudice include incarceration, anxiety and concern, and memory loss and canned testimony on the part of the State's witnesses.

e. Totality of the circumstances
Considering the totality of the circumstances, Johnson has not been denied his constitutional right to a speedy trial. The length of the delay from date of arrest to date of trial was 409 days, which is presumptively prejudicial. After subtracting the delays which are attributable to Johnson, the total period of delay is 211 days, which is less than eight months. Johnson's late mention of his right to a speedy trial is not fatal to his claim. However, he can claim very little benefit from this factor. In addition, other than incarceration, Johnson has made no showing of actual prejudice. A balance is struck in favor of rejecting a defendant's speedy trial claim if "the delay is neither intentional nor egregiously protracted, and where there is a complete absence of actual prejudice." Rhymes v. State, 638 So.2d 1270, 1275 (Miss. 1994).

*794 II. DID THE TRIAL COURT ERR IN FAILING TO GRANT DEFENDANT'S MOTION FOR A MISTRIAL AFTER THE JURY VIEWED A TELEVISION INTERVIEW GIVEN BY THE DISTRICT ATTORNEY DURING THE COURSE OF THE TRIAL?
When the trial reconvened on November 19, 1992, the court asked if any of the jurors were exposed to any media coverage of the case. One of the jurors responded, "We all saw a little article on T.V. last night." At that point, the judge asked if any of the jurors could not totally disregard what they heard or viewed and when they indicated that they could, he said that he assumed all of the jurors would follow the instructions of the court when he tells them to disregard what they saw or heard.
Later, in chambers, Johnson moved for a mistrial. He asked that a subpoena duces tecum be issued for the tape of the news broadcast and that the jury be polled individually as to whether they saw the broadcast in which the district attorney was interviewed. The judge agreed to poll the jury.
When the court polled the jury, five of the jurors indicated they saw the broadcast. Juror Karen Robinson said she was in the kitchen, and her little girl hollered that she was on T.V. Juror Howard Yawn said he saw a little blip where the district attorney said he may not be able to put the little girl on the stand. Juror Shelby Tims said he saw just a sketch of it. Juror Margaret Hill said that she just passed by and saw the picture but didn't really hear anything. Juror Julius Sims said he saw it. All five jurors said that they would not be affected by the media coverage and that they could follow the court's instructions and totally disregard it. Although the court did not specifically rule on the defendant's motion, the court did allow the five jurors to remain on the jury and so, by implication, overruled the motion for a mistrial. Johnson appeals this ruling.
Whether to declare a mistrial is committed to the sound discretion of the trial court. Brent v. State, 632 So.2d 936, 941 (Miss. 1994). The failure of the court to grant a motion for mistrial will not be overturned on appeal unless the trial court abused its discretion. Bass v. State, 597 So.2d 182, 191 (Miss. 1992).
A person is competent to be a juror even where he has gained an impression about the case through the media if the court finds that the juror has "no interest, bias or prejudice in the prosecution, and no desire to reach a result other than gained from the evidence and the law in the case, and that any opinion he had formed would yield entirely to the evidence and the law." Simmons v. State, 241 Miss. 481, 489, 130 So.2d 860, 863 (1961). In Mack v. State, 650 So.2d 1289 (Miss. 1994), two prospective jurors admitted they read a newspaper account about the case on the evening of the first day of jury selection. These two were later selected to serve on the jury. The defendant contended that selection of these two jurors prejudiced his case because the newspaper article indicated that he was an escapee when he committed the crime for which he was being tried. This Court held that the defendant's contention was without merit because the court had questioned the jurors as to whether they could return a verdict based only on the testimony and evidence and the jurors had indicated they could. The jurors had also said they would not give any weight as to what they had read in the newspaper, and "[t]he jurors' promises to follow the law `must be given considerable deference.'" Id. at 1308 (quoting Porter v. State, 616 So.2d 899, 906 (Miss. 1993)).
In Hannah v. State, 336 So.2d 1317 (Miss. 1976), the defendant moved for a mistrial on the basis that some members of the jury had access to a newspaper which carried an account of the trial. The court overruled the motion because there was not proof that any of the jurors had read the article and the possibility of exposure to the article did not deny the defendant his right to a fair trial. This Court agreed, especially in light of the fact that the article "accurately portrayed the facts of the trial with which the jurors were already familiar and contained no prejudicial statement against either the state or the defendant." Id. at 1323.
*795 In Earley v. State, 595 So.2d 430 (Miss. 1992), an article on the trial appeared in the morning edition of the newspaper on the second day of trial. The judge polled the jurors to see if they had read the article and four jurors indicated they had seen or read it. The judge then questioned each of these four alone, and they all indicated that it would not affect their opinions in the case. The court denied the defendant's motion for a mistrial but did excuse the only juror who had read the entire article. The court again admonished the jury at a later time. This Court held that the trial court's decision was not an abuse of discretion.
In this case, the jurors who had seen or heard some or all of the broadcast testified that they would not be affected by what they heard and would follow the instructions of the court. Because the jurors' promises to follow the law must be given considerable deference, the court did not err in overruling the defendant's motion for a mistrial.

III. DID THE TRIAL COURT ERR IN OVERRULING DEFENDANT'S OBJECTION TO HEARSAY TESTIMONY?
Johnson asserts as error the fact that three of the State's witnesses, Dr. Glenn Campbell, Angie Ruffin, and Joyce Wilkins, were allowed to testify concerning hearsay statements made to them by Terri in which she identified Bill Johnson as the person who sexually assaulted her. Johnson objected to the hearsay testimony offered by each of these witnesses at trial, and the court overruled the objections.
Rule 801 of the Mississippi Rules of Evidence defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 803 delineates certain exceptions to the hearsay rule. Pertinent to the present case are the exceptions found in subsections (4) and (25). Rule 803(4) provides that:
[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment, regardless of to whom the statements are made, or when the statements are made, if the court, in its discretion, affirmatively finds that the proffered statements were made under circumstances substantially indicating their trustworthiness.
Rule 803(25) provides that:
[a] statement made by a child of tender years describing any act of sexual contact performed with or on the child by another is admissible in evidence if: (a) the court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide substantial indicia of reliability; and (b) the child either (1) testifies at the proceedings; or (2) is unavailable as a witness: provided, that when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.
Under Rule 803(4), statements by a child victim relied upon by a treating physician identifying the perpetrator as a member of the child's household are admissible in child abuse cases. Doe v. Doe, 644 So.2d 1199, 1206 (Miss. 1994). Where the child is sexually assaulted by a member of the child's immediate household, an important part of treatment is the prevention of further sexual abuse as well as the treatment of emotional and psychological injuries. Jones v. State, 606 So.2d 1051, 1056-57 (Miss. 1992). Where the perpetrator is not a member of the child's immediate household, it is error to admit statements identifying the perpetrator made by the child to a treating physician. However, such admission will be harmless if the testimony is merely cumulative. Jones, 606 So.2d at 1057. To be admissible under 803(4), "`the declarant's motive in making the statement must be consistent with the purposes of promoting treatment; and ... the content of the statement must be such as is reasonably relied on by a physician in treatment.'" Doe, 644 So.2d at 1205-06 (quoting Jones, 606 So.2d at 1056)).
*796 During his direct examination of Dr. Campbell, the district attorney asked, "Did you also try to make a determination pursuant to your medical diagnosis and treatment as to the source of that venereal disease?" The defendant objected, and the court dismissed the jury in order to consider the objection. Primarily, the defendant objected because Terri made the statement to the doctor two weeks after the alleged incident. The judge held that he was of the opinion that the statement fell within the parameters of Rule 803(4) and case law. When the jurors returned to the courtroom, the examination of Dr. Campbell continued, Dr. Campbell testified that Terri told him that Bill was the one who had sexual intercourse with her.
Johnson's objection to the hearsay statements on the basis that the statements were made two weeks after the alleged incident occurred is groundless. Rule 803(4) provides that statements falling within the exception may be admitted "regardless of ... when the statements are made."
Under Rule 803(25), a determination of whether the hearsay statements made by the child victim exhibit trustworthiness and reliability includes looking at such factors as spontaneity and consistent repetition, the mental state of the child, the use of terminology unexpected of a child of similar age, and lack of motive to fabricate. Doe, 644 So.2d at 1206. These factors are not, however, exclusive, and the court must make an overall determination of "whether the child declarant was particularly likely to be telling the truth when the statement was made." Griffith v. State, 584 So.2d 383, 388 (Miss. 1991) (quoting Idaho v. Wright, 497 U.S. 805, 822, 110 S.Ct. 3139, 3150, 111 L.Ed.2d 638 (1990)). Other corroborating evidence of the defendant's guilt cannot be taken into consideration by the court when making the determination. Id.
The child's identification of Bill Johnson as the perpetrator and other hearsay statements were also offered through Joyce Wilkes and Angie Ruffin. Joyce Wilkes talked to Terri on the day Terri was first examined by Dr. Campbell. She testified that Terri did not appear to be lying, that nobody heard Terri make the statement to her, and that Terri talked to her after she had asked Terri a couple of questions, because Terri had opened up to her on previous occasions. She also said she did not believe a five or six-year-old child would know the things that Terri told her in order to be making it up.
Angie Ruffin talked to Terri on May 15. Ruffin and Terri were the only persons present at the time. Terri described what had happened to her in explicit detail. The child volunteered the information, and Ruffin found no motive on the part of the child to lie.
Johnson objected to the testimony of both of these witnesses, and the court, after hearing proffers of the witnesses' testimony, made on-the-record findings that the testimony of both witnesses would be admissible under Rule 803(25). The court took into consideration the factors of whether there is an apparent motive on the declarant's part to lie, the general character of the declarant, that one person heard the statements, whether the statements were made spontaneously, the timing of the declaration, the relationship between the declarant and the witness, the possibility of the declarant's faulty recollection is remote, the certainty that the statements were made, the credibility of the person testifying about the statement, the age or maturity of the declarant, whether suggestive techniques were used in eliciting the statement, and whether the declarant's age, knowledge and experience make it unlikely that the declarant fabricated the matters. Taking all of these factors into consideration, the court felt the testimony of each witness qualified as an exception under Rule 803(25).
Again, Johnson bases his objection to this testimony, in part, on the fact that the child told the two witnesses what happened 12 days and 23 days after the alleged incident. However, as long as the court makes an overall determination that the child declarant was particularly likely to be telling the truth when the statement was made, time is only one of the factors to consider. In this case, the court listened to the proffered testimony and made a determination, based upon *797 the stated factors, that the testimony was admissible under Rule 803(25).
Based on the testimony proffered by Wilkins and Ruffin, the court's ruling on the admissibility of the testimony cannot be said to be error. Since this testimony included the identification by Terri of Bill Johnson as the perpetrator and since Terri testified at trial and indicated that Johnson was the person who sexually assaulted her, admission of the hearsay statements offered through Dr. Campbell is harmless error.

IV. DID THE TRIAL COURT ABUSE ITS DISCRETION IN SENTENCING THE DEFENDANT?
The court sentenced Johnson to life imprisonment. Johnson complains that this was error because it was a more severe sentence than the five-year sentence offered by the State in plea negotiations, and it was imposed because he had chosen to exercise his constitutional right to trial by jury.
Imposition of a defendant's sentence is within the discretion of the trial court, and generally, this Court will not review the sentence if it is within statutory limits. Reynolds v. State, 585 So.2d 753, 756 (Miss. 1991). However, the trial court is prohibited from imposing a heavier sentence because the defendant has exercised his constitutional right to trial by jury than that which was offered the defendant in the plea bargaining process. Temple v. State, 498 So.2d 379, 381 (Miss. 1986). The trial judge should never participate in plea bargaining process and should base the defendant's sentence only upon legitimate factors. Fermo v. State, 370 So.2d 930, 932-33 (Miss. 1979).
The court does not err in sentencing the defendant to a greater sentence than that which was offered in the plea bargaining process where the record reflects that the court remained aloof from the bargaining process or was unaware of the bargaining. Temple, 498 So.2d at 382. In addition, the court does not abuse its discretion in imposing a heavier sentence if the record reveals that the sentence was based on a presentence report and prior convictions. Gillum v. State, 468 So.2d 856, 864 (Miss. 1985). A heavier sentence will not be an abuse of discretion and does not violate any right of the defendant
[w]here a lenient sentence is proposed in pretrial plea bargain negotiations, and where after rejecting same defendant is found guilty by a jury, and where before imposition of sentence the Circuit Judge is presented with evidence of aggravating circumstances relevant to sentencing not known to him at the time of the original plea bargain negotiations, and where in fact the Circuit Judge imposes a heavier sentence than was proposed at the time of plea bargain and in fact bases imposition of the heavier sentence upon the information of aggravating circumstances of which he has been newly made aware, and where the heavier sentence has not been imposed upon the accused in whole or in part as a penalty for his exercise of his constitutional right to trial by jury.
Pearson v. State, 428 So.2d 1361, 1365 (Miss. 1983).
The court sentenced Johnson to serve a term of life imprisonment in the state penitentiary "pursuant to Section 97-3-65 for that particular matter [capital rape], you being a person over the age of 18 years or older and having been convicted of rape by carnally knowing a child under the age of 14 years." There is absolutely nothing in the record which reflects that the court was involved in the plea negotiations between the defendant and the State or that the court imposed a heavier sentence because the defendant exercised his right to a constitutional trial. The court was merely following the dictates of section 97-3-65 which provides that a person convicted of rape of a child under the age of fourteen shall be sentenced to death or to life imprisonment. This is a legitimate reason for the imposition of life imprisonment.

CONCLUSION
Johnson was not denied his statutory or constitutional right to a speedy trial. Subtracting the 44-day and the 154-day delays attributable to the defendant from the total period of 355 days occurring between the *798 date of arraignment and the date of trial leaves a total of 157 days, which is well within the 270 days required by statute. Considering the totality of the circumstances, the fact that the total period of delay was less than eight months after subtracting the delays which are attributable to Johnson and the fact that the defendant has made no showing of actual prejudice other than incarceration, a balance is struck in favor of rejecting Johnson's speedy trial claim.
The jurors who had seen or heard some or all of the broadcast on the evening of the first day of trial testified that they would not be affected by what they heard and would follow the instructions of the court. Because the jurors' promises to follow the law must be given considerable deference, the court did not err in overruling the defendant's motion for a mistrial.
Based on the testimony proffered by the State's witnesses, Joyce Wilkins and Angie Ruffin, the court's ruling that the testimony was admissible under Rule 803(25) is not error. Since this testimony included the identification by Terri of Bill Johnson as the perpetrator and since Terri testified at trial and indicated that Johnson was the person who sexually assaulted her, admission of the hearsay statements offered through Dr. Campbell is harmless error.
There is absolutely nothing in the record which reflects that the court was involved in the plea negotiations between the defendant and the State or that the court imposed a more severe sentence because the defendant exercised his constitutional right to a trial. The court was merely following the dictates of section 97-3-65 which provides that a person convicted of rape of a child under the age of fourteen shall be sentenced to death or to life imprisonment. This is a legitimate reason for the imposition of life imprisonment.
CONVICTION OF CAPITAL RAPE AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.
PRATHER and SULLIVAN, P.JJ., and BANKS, McRAE, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
DAN M. LEE, C.J., concurs in result only as to Part III.
MILLS, J., not participating.