SOUTHWICK, Judge,
for the Court:
¶ 1. David Eugene Magnusen was convicted by a jury in the Circuit Court of Harrison County of the crimes of burglary of an occupied dwelling, aggravated assault, robbery, and rape. Magnusen challenges his conviction on these grounds: (1) the State violated his constitutional right to a speedy trial; (2) the trial court failed to appoint or grant his defense counsel an opportunity to obtain a forensic expert; (3) the court refused to disperse funds for the procurement of a private investigator; (4) the State obtained blood and hair samples from him in violation of his Fourth Amendment right and without informing him of his right to refuse such intrusions; (5) the court erred in denying his motion to suppress the testimony of Dr. Moran, the emergency room physician who examined the victim; and (6) the verdict was against the overwhelming weight of the evidence. These assignments of error are without merit and we affirm.
STATEMENT OF FACTS
¶ 2. During the early morning hours of May 19, 1990, Evelyn Verchinski was awakened by the sounds of her dog’s incessant barking. Ms. Verchinski, who lived alone, got up to investigate. As she turned on the light in her dining room,*she noticed an unusual reflection in a mirror located down the hallway. Ms. Verchinski turned off the light and when she turned it on again a young man, armed with a shovel, suddenly ran toward her. She attempted to escape by running into the garage and then into the backyard where she kept her dog. The attacker, however, lunged toward her and forced her to the ground in the garage.
¶ 3. A fierce struggle ensued. Ms. Ver-chinski tried to spray the intruder with flea spray and to bite through his sock-covered arms. However, the attacker struck her in the face with the shovel and then slammed her against the vehicle parked in the garage. The intruder then dragged her into the residence. Once inside, he instructed Ms. Verchinski to clean the blood from her face and nightgown. The intruder demanded money and then ordered her into the bedroom. He forced Ms. Verchinski to undress and to engage in fellatio and sexual intercourse. When a knock at the front door startled the attacker, he tied Ms. Verchinski to a chair, placed her in a spare bedroom, and fled from the residence. Shortly thereafter, Ms. Verchinski managed to untie herself, *286 call the police, and give a description of the suspect. She was transported to the local hospital where authorities performed a sexual assault examination.
¶ 4. An officer from the Gulfport Police Department was advised of the attack. As he responded to the scene, the officer noticed an individual matching the physical description of the attacker standing outside a local bar. The officer attempted to stop and question the man, but he jumped over a fence and escaped. The officer and Ms. Verchinski subsequently identified David Eugene Magnusen in a photographic line-up as the person each had seen. Ms. Verchinski later also positively identified Magnusen in a line-up at the police station.
¶ 5. On May 30, 1990, Magnusen was apprehended and indicted for burglary of an occupied dwelling, aggravated assault, robbery, and rape. The court conducted a hearing based on an alleged violation of Magnusen’s constitutional right to a speedy trial. The court concluded that there had been a violation and dismissed all charges on August 22, 1991. The State appealed, though its request for an expedited hearing was denied by the supreme court.
¶ 6. On November 17, 1994, the supreme court issued its opinion in the case. The court held that the trial court paid insufficient attention to the various distinct periods of delay in reaching its conclusion. The court also concluded that the trial court erroneously required that the delay be for good and sufficient cause rather than determining whether the reason weighed heavily, lightly, or not at all. Consequently, the court reversed and remanded the cause for Magnusen to stand trial on all charges. See State v. Magnusen, 646 So.2d 1275 (Miss.1994).
¶ 7. Magnusen’s attorney filed, and the supreme court granted, a petition for an enlargement of time to file a petition for rehearing. However, there is no record that a petition for rehearing was ever filed. On January 17, 1995, the circuit clerk received the supreme court’s mandate. An order to reinstate the cause on the docket was filed on January 20, 1995. Extradition proceedings to have Magnusen returned from incarceration in Wisconsin were not concluded until July 22, 1995. Trial commenced on February 26, 1996, and Magnusen was convicted on all counts.
DISCUSSION
I. CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL
¶ 8. Magnusen asserts that the trial court committed reversible error by failing to dismiss for lack of a speedy trial due to additional delays that occurred after remand. He was arrested on May 30, 1990, and not tried until February 26, 1996. He alleges that this delay prejudiced his case and violated his constitutional right to a speedy trial. Magnusen makes no claim concerning the statutory 270-day rule under Section 99-17-1 of the Mississippi Code.
¶ 9. The right to a speedy trial is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, as well as Article 3, Section 26 of the Mississippi Constitution of 1890. An alleged violation of the constitutional right to a speedy trial is examined under a four part test announced in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The factors, which must be balanced in light of all surrounding circumstances, are: (1) the length of delay; (2) the reason for the delay; (3) the defendant’s assertion of his right to a speedy trial; and (4) any prejudice to the defendant resulting from the delay. Id. at 533, 92 S.Ct. 2182; Giles v. State, 650 So.2d 846, 850 (Miss.1995). The weight given to each factor “turns on the peculiar facts and circumstances of each case, the quality of evidence available on each factor and, in the absence of evidence, identification of the party with the risk of non-persuasion.” *287 Stogner v. State, 627 So.2d 815, 818 (Miss.1993).
¶ 10. The circuit court found there to be no speedy trial violation but did not articulate specific findings of fact. In such circumstances, the appellate court must itself apply de novo the four Barker factors. See State v. Ferguson, 576 So.2d 1252, 1255 (Miss.1991). We do so now.
A. Length of Delay
¶ 11. The first task is to designate a starting point for the speedy trial calculations. The constitutional right to a speedy trial generally attaches at the time a person is effectively accused of a crime. Box v. State, 610 So.2d 1148, 1150 (Miss.1992). The procedural history of this case presents an unusual though not unique situation. Magnusen was arrested on May 30, 1990. The trial court dismissed the case on August 22, 1991. On November 17, 1994, the supreme court reinstated the prosecution and ordered Magnusen to stand trial on all charges. The court granted Magnusen’s request for an extension of time to file his petition for rehearing; however, no such petition was ever filed. The court’s mandate was issued on January 13, 1995 and was received by the circuit clerk on January 17,1995.
¶ 12. Magnusen asserts that this Court should consider the entire time period from his 1990 arrest until his 1996 trial. Conversely, the State claims that the speedy trial calculations should begin from the date the circuit clerk received the mandate from the supreme court, which was January 17,1995.
¶ 13. We first note that the supreme court has determined that after a conviction has been reversed, the speedy trial guarantee is measured from “the date we reversed his original conviction.” Ferguson, 576 So.2d at 1254. Ferguson’s original reversal was not due to speedy trial problems during his original prosecution. Ferguson v. State, 507 So.2d 94 (Miss.1987). To determine whether that is a relevant distinction here, we start by noting that the primary purpose of the speedy trial guarantee is “to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved charges.” United States v. MacDonald, 456 U.S. 1, 8, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982). The Court has held that once charges are dismissed against a defendant, the speedy trial guarantee is no longer applicable to that time period. Id.; United States v. Loud Hawk, 474 U.S. 302, 312, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986). In Loud Hawk, seven years passed after a trial court ordered that certain evidence be suppressed and before the government’s interlocutory appeals of that order were finally resolved. Loud Hawk, 474 U.S. at 307-10, 106 S.Ct. 648. The Court held that even though the government’s desire to prosecute was evident from the pursuit of the appeal, the absence of any actual restraint and the dismissal of the indictment prevents the time period of the appeal from being included in the speedy trial analysis. Id. at 312, 106 S.Ct. 648. Though a defendant may still suffer some restraint on his liberty or stress and anxiety following the dismissal of charges, it is no greater than that endured by an individual “openly subject to a criminal investigation.” MacDonald, 456 U.S. at 9, 102 S.Ct. 1497.
¶ 14. The Mississippi Supreme Court addressed a somewhat similar situation in Carlisle v. State, 393 So.2d 1312 (Miss.1981). Carlisle’s conviction in a third trial was reversed by the supreme court after his first conviction had been set aside on a motion for new trial and his second trial had ended in a mistrial. Id. at 1313. A fourth trial also ended in conviction. In the second appeal, the alleged violation of speedy trial rights was computed under Barker from the date that the circuit court clerk filed the mandate from the earlier *288 reversal. Id. at 1314. See also Mitchell v. State, 572 So.2d 865, 870 (Miss.1990) (employing date of reversal for commencement of speedy trial computations).
¶ 15. The most recent case on the issue involved the lengthiest delay. De La Beckwith v. State, 707 So.2d 547 (Miss.1997). The following time periods were involved: thirty years between the offense and the conviction, twenty-nine years from two mistrials until conviction, and twenty-five years from the date that the indictment was retired to the files until conviction. Id. at 565. The court in effect found that the years after the indictment was retired to the files were the equivalent of the accused no longer being under indictment for speedy trial purposes. Id. at 566. The indictment had not been dismissed as in Loud Hawk, but the effect was the same. Thus Beckwith is consistent with Carlisle.
¶ 16. One much more limited question is whether the important date that recommences speedy trial time computations is the date of the supreme court opinion, or the date of the mandate. That two month difference here is of little consequence, since the period between November 17, 1994, and January 17, 1995 would not benefit Magnusen. Most of that period was the result of his motion for enlargement of time to file a petition for rehearing, a petition that he never filed.
¶ 17. After the trial court dismissed the charges on August 22, 1991, Magnusen was not incarcerated or subjected to other substantial restrictions on his liberty. Although the supreme court has occasionally referred to the date of its reversal of an earlier conviction as relevant for speedy trial guarantees, the circuit court is without jurisdiction to reinstate the case on the docket until it receives the mandate from the supreme court. The State may not petition to reinstate the case on the docket until the supreme court finally disposes of the case. Consequently, we find that the first day of Magnusen’s speedy trial calendar is January 17,1995.
 ¶ 18. Under Mississippi law, a delay of eight months or longer is presumptively prejudicial. Smith v. State, 550 So.2d 406, 408 (Miss.1989). A delay which is presumptively prejudicial will not require reversal but will require an examination of the remaining factors. Handley v. State, 574 So.2d 671, 676 (Miss.1990). In this case, Magnusen’s trial was delayed approximately thirteen months. Thus prejudice is presumed, and this Court must analyze the remaining Barker factors.
B. Reason for the Delay
¶ 19. The State bears the burden of ensuring that the defendant is provided with a speedy trial. Jackson v. State, 614 So.2d 965, 969 (Miss.1993). Therefore, any delay not attributable to the defendant will count against the State, unless the State can show good cause for the delay. Polk v. State, 612 So.2d 381, 386 (Miss.1992). Both the State and Magnusen were responsible for portions of the thirteen month delay between the receipt of the supreme court’s mandate and Magnusen’s trial.
¶ 20. The first delay was the period of time between the receipt of the mandate on January 17, 1995, and the extradition of Magnusen from the Oshkosh Correctional Facility in Wisconsin to Mississippi on June 22, 1995. During the hearing on Magnusen’s motion to dismiss, the district attorney’s office presented evidence relating to this time period. On January 20, 1995, the State made an oral motion to reinstate the cause on the trial docket and requested the issuance of an alias capias which the court granted. The State claimed that it mailed a notice of detainer and acknowledgment to Magnu-sen in Wisconsin. The State argued that Magnusen refused to waive extradition because he wanted to “finish a program” at the Wisconsin Correctional Facility. Mag-nusen denied this.
*289 ¶ 21. On March 20, formal extradition proceedings began. Ten days later, Mississippi’s governor sent a request for interstate rendition and an appointment of an agent to the Wisconsin’s governor. On June 7, the governor of Wisconsin directed the warden at the Oshkosh Correctional Facility to contact the Harrison County Sheriffs Department and inform them when Magnusen would be available for transport. On June 20, approval was given to move Magnusen to Mississippi, and he arrived on June 22.
¶22. Based on this evidence, we find that this period of delay is neutral. The State moved relatively promptly to have Magnusen returned to Mississippi. Regardless of whether Magnusen refused to waive extradition or not, the record contains nothing to demonstrate that if Mag-nusen had consented to extradition he would have been released any earlier from the Wisconsin facility.
¶ 23. The second period of delay occurred between July 7 and October 3. During this time period, Magnusen’s counsel filed a motion to withdraw as attorney of record. The court granted the motion and appointed a new attorney. The State filed a motion for discovery on July 21. On July 24, Magnusen filed, and the court granted, his motion for continuance until August 7. Magnusen’s attorney subsequently filed a motion for the clerk to make a copy of the court files. On September 20, the court granted defense counsel’s motion for the appointment of co-counsel to assist in the representation of Magnusen. On that same day, Magnusen filed a multi-faceted motion entitled, “Request for Production and Inspection, Suppression, Appointment of Experts, Reservation of Confrontation Rights, Demand for Speedy Trial, and Reservation to File other Motions.” The court granted Mag-nusen’s request on October 3.
¶ 24. Where the defendant is responsible for delay, that period of time is weighed against him. Johnson v. State, 666 So.2d 784, 793 (Miss.1995). “A delay caused by the withdrawal of the defendant’s attorney which entails allowing the new attorney a reasonable time to become familiar with the case and prepare for trial cannot be weighed against the State because it is beyond the State’s control.” Id. at 792. Thus, we weigh this period of time against Magnusen.
¶ 25. The final period of time was from October 6 until February 26, when Magnusen’s trial began, a period of approximately four and one-half months. On October 6, Magnusen’s counsel filed a request for a continuance based on heavy case loads, a pending petition in federal court, and delays in discovery. A few days later, the trial court granted the request and reset the case for trial on December 11. Magnusen filed a second request for discovery on October 13. On December 4, Magnusen filed a motion to compel the director of the Oshkosh Correctional Facility to produce an inmate synopsis and data sheet and a motion to dismiss for lack of a speedy trial. Magnusen signed a speedy trial waiver effective from December 4 until February 26, 1996, the date of his new trial. On December 11, Magnusen filed a motion for continuance because of a conflict with the December 11 trial date. A hearing on his speedy trial motion was held on February 5. The additional delay resulting from these events weighs entirely against Magnusen.
C. Assertion of Right to Speedy Trial
¶ 26. As discussed above, the State bears the burden of bringing a defendant to trial in a speedy manner. McGhee v. State, 657 So.2d 799, 804 (Miss.1995). While a defendant is not required to demand a speedy trial, his assertion of such a right will weigh more heavily in his favor under the Barker analysis. Johnson v. State, 666 So.2d 784, 793 (Miss.1995).
¶ 27. Magnusen arguably asserted his right to a speedy trial in a motion filed on September 20, 1995, entitled “Defen *290 dant’s Request for Production and Inspection, Suppression, Appointment of Experts, Reservation of Confrontation Rights, Demand for Speedy Trial and Reservation to File other Motions.” Despite the title of the motion, no speedy trial demand was made in the text of the eleven-page document. During a September 29 hearing on the motion, neither party discussed the demand for a speedy trial.
¶ 28. Shortly after filing his motion for a speedy trial, Magnusen filed several other motions that materially contributed to the delay of his trial. On October 6, he requested a continuance and the trial was reset for December 11. Magnusen also filed a motion to compel the director of the Wisconsin facility to forward his records to Mississippi. On December 4, Magnusen filed a motion to dismiss and executed a speedy trial waiver. On December 11, Magnusen filed another request for a continuance and the trial was reset for February 26. The trial court denied Magnusen’s motion to dismiss following a hearing on February 5.
¶ 29. The defense[1] counsel’s actions were inconsistent with Magnusen’s assertion of the right to a speedy trial. The case was set for trial on two separate occasions, October 9 and December 11, but was rescheduled due to circumstances beyond the State’s control. Magnusen filed his motion to dismiss seven days prior to his trial date and then requested an additional continuance on the day of his trial. Because the delay following Magnusen’s alleged September 20 demand for speedy trial was attributable to his actions, we find that there was no meaningful demand. See Herring v. State, 691 So.2d 948, 956 (Miss.1997); Simmons v. State, 678 So.2d 683, 687 (Miss.1996).
D. Prejudice to the Defendant
¶ 30. The supreme court has recognized that a defendant may be prejudiced in two different ways by a substantial delay. Skaggs v. State, 676 So.2d 897, 901 (Miss.1996). First, a delay may impair the accused’s defense because of the potential loss of evidence, the unavailability of witnesses, or the erosion of a witness’s memory. Id. Second, the defendant may suffer because of the restraint on his liberty by his incarceration. Id. In support of such prejudice, the defendant may offer evidence of oppressive pretrial incarceration, anxiety and concern, and impairment of his defenses. Johnson v. State, 666 So.2d 784, 793 (Miss.1995). Althouglí a defendant is not required to “make an affirmative showing of prejudice to show that his right to a speedy trial was violated,” without a showing of any prejudice, this final factor cannot weigh in his favor. Polk v. State, 612 So.2d 381, 387 (Miss.1992).
¶ 31. During the hearing, Magnu-sen asserted several different theories of prejudice. He alleged that the pending appeal before the Mississippi Supreme Court in conjunction with a letter from the Harrison County District Attorney contributed to the denial of his parole request in Wisconsin.[1] Magnusen also claimed that the delay impaired his ability to locate an alibi witness and resulted in the spoliation of evidence. Finally, he argued that the Harrison County District Attorney’s Office engaged in selective prosecution.
¶ 32. With respect to pretrial incarceration, Magnusen was released following the dismissal of his case on August 22, 1991. In September of 1992, Magnu-sen was sentenced by a Wisconsin court on burglary and robbery charges. Although *291 Magnusen asserted that he was denied parole in Wisconsin because of the pending charges in Mississippi, he offered no evidence to support this assertion. Magnu-sen alleged that the “parole lady” advised him that his parole was denied because of the charges; however, the Wisconsin sentencing report does not contain any indication that parole was denied based on the pending appeal in Mississippi. The overwhelming majority of the delay following Magnusen’s extradition to this State was attributable to Magnusen and not the State. Moreover, incarceration alone is not sufficient prejudice to warrant reversal. Taylor v. State, 672 So.2d 1246, 1261 (Miss.1996).
¶ 33. Magnusen also contends that the delay in his trial resulted in his loss of an alibi witness who was vital to his defense. While Magnusen admitted that he did not try to locate the witness before he returned to Mississippi, he claimed that he attempted to locate her since his return but to no avail. Magnusen stated that he was not able to provide his attorneys with her telephone number or her address. On cross-examination, Magnusen stated that the witness could provide him with an alibi for May 11. The State then noted that the present charges related to events that occurred on May 19. On redirect, Magnusen argued that the witness could provide information about his activities during the eight-day period.
¶ 34. In Rhymes v. State, 638 So.2d 1270, 1274 (Miss.1994), the defendant claimed that he suffered the prejudice of a lost key witness as a result of the delay in his trial. The supreme court noted that there was no indication that the defendant had secured the witness some time prior to trial and lost him because of the delay. Id. The court concluded that the defendant’s “total failure to attempt to secure his appearance by subpoena [was] fatal to the claim of actual prejudice.” Id.
¶ 35. Although Magnusen stated that he had contacted the witness’s parents in an attempt to locate her, the record does not contain any evidence that he diligently sought to secure her presence prior to or at trial. Magnusen did not request the issuance of any subpoenas for the witness. Additionally, he did not inquire as to whether someone else could provide him with an alibi for that day. Because Mag-nusen exerted only the slightest effort in finding the witness and he contributed to much of the delay, we find that this weighs only lightly in his favor.
¶ 36. Magnusen argued that he was prejudiced by the State’s failure to preserve a blood sample from the victim and a blood scraping from the scene. The fact that the crime laboratory permitted the victim’s blood sample to putrify was presented during the initial appeal. The supreme court considered the precise issue in the original Magnusen appeal, though it did so under the second Barker factor, the reason for the delay, rather than the prejudice prong. The court held that such negligence by the crime laboratory should be weighed against the State but not heavily. Magnusen, 646 So.2d at 1281. No allegation of prejudice arising from such spoilation of evidence was made by Magnusen during the initial appeal. Regardless, the fact that the crime laboratory had to procure a second blood specimen from the victim did not prejudice Magnusen in any way.
¶ 37. In regard to the blood scraping obtained from the victim’s vehicle, Magnu-sen claims that the crime laboratory failed to conduct Louis subtyping to determine more detailed characteristics of the blood. However, during the trial, Debra Butler testified that it would have been extremely difficult, if not impossible, to perform Louis subtyping on a dried blood sample. Once the blood is submerged in a solution to determine the blood type, Butler testified that it is not possible to conduct further Louis subtyping. Consequently, this weighs against neither party.
¶ 38. Though Magnusen also alleges that the Harrison County District Attorney engaged in selective prosecution, the evi *292 dence presented during the hearing failed to support his allegation.
E. Totality of the Circumstances
¶ 39. A balance of the Barker factors fails to support Magnusen’s allegation that he was denied his constitutional right to a speedy trial. While there was some delay, the majority of the delay was attributable to Magnusen. Magnusen’s actions following his demand for a speedy trial were in derogation of his assertion of his right to a speedy trial. Though such action is not fatal to his assertion, he can claim little benefit from this factor. Moreover, the slight prejudice suffered by Magnusen does not warrant a dismissal of the charges against him.
II. FAILURE TO DISPERSE FUNDS FOR FORENSIC EXPERT
1f 40. Magnusen filed a motion for the appointment of a forensic expert to assist in the preparation of his defense. During a pretrial hearing on the motion, the court noted that the defense had not suggested the names of any proposed experts. In response, the defense counsel stated that he would be “more than willing ... to provide within the next five days a list of proposed experts within each area ... for consideration to be nominated as experts in this case along with a fee schedule and ... an estimated cost.” The trial court accepted the defense counsel’s offer, and at the conclusion of the hearing, the court commented that it was the only outstanding motion. The court confirmed that the defense counsel would furnish the names and the basis for. the appointment of the expert. The record does not indicate that the defense submitted a list of experts to the court.
¶ 41. During the trial, the defense moved for the appointment of a forensic pathologist to review the records from the crime laboratory. The defense offered to provide the court with the names of three pathologists “by the close of the business day.” The court took the matter under advisement. Following a short recess, the defense moved for a one-week continuance to prepare for cross-examination of the State’s expert and to secure an independent pathologist. The court overruled the motion for continuance.
¶ 42. The movant bears the responsibility of obtaining a ruling from the court on a motion filed by him and his failure to secure such a ruling constitutes waiver. Johnson v. State, 461 So.2d 1288, 1290 (Miss.1984). Although the defense counsel stated that he would supply the court with a list of names of potential forensic experts, he failed to do so.[2] Instead, the defense waited until midway through the trial before bringing the motion to the court’s attention. The record does not contain any explanation concerning the defense’s failure to comply with its earlier offer. Because the defense failed to secure a timely ruling on the motion, we find that the trial court did not abuse his discretion in denying the motion for a continuance.
III. FAILURE TO APPOINT A PRIVATE INVESTIGATOR
¶ 43. In some instances, a defendant is entitled to the appointment of nonlegal personnel for the preparation of his defense. Hansen v. State, 592 So.2d 114, 125 (Miss.1991). A defendant is required to offer concrete reasons for requiring the assistance of an investigator. Duplantis v. State, 708 So.2d 1327, 1346 (Miss.1998). The attorney “should state specifically why he needs an investigator. Why should an investigator be necessary to perform the tasks an attorney ordinarily performs?” Butler v. State, 608 So.2d 314, 321 (Miss.1992).
*293 ¶ 44. Defense counsel asserted that he needed the-assistance of an investigator generally because of the passage of time, and specifically to locate potential witnesses and map the layout of the neighborhood. In response, the State noted that the defendant had been appointed two attorneys for the case. The court concluded that an investigator was not necessary at the time.
¶ 45. The investigator was to locate witnesses who were at a local bar on the night of the attack in order to assist on an alibi. Magnusen did not offer any evidence that he knew the names of the individuals in the bar or that the individuals could provide him with an alibi. Rather, Magnusen only generally alleged that someone in the bar that night might have been able to assist with his defense. Additionally, he failed to provide the trial court with the name or proposed cost of an investigator. Magnusen had the assistance of two court-appointed attorneys. Absent a concrete explanation for the necessity of an investigator, the trial court did not abuse its discretion in denying this request.
IV. SUPPRESSION OF EVIDENCE
¶ 46. In his next assignment of error, Magnusen alleges that the trial court committed reversible error when it denied his motion to suppress blood and hair samples collected as part of a rape suspect Mt. Although Magnusen admits that he acquiesced to the collection of head and pubic hairs and executed a waiver for the extraction of blood, he claims that the State failed to advise him of his right to refuse such a request. As a result, Mag-nusen claims that his consent to the search was not a knowledgeable waiver of his constitutional right to be free from unreasonable searches.
¶ 47. The Fourth Amendment of the United States Constitution guarantees the right to be free from unreasonable searches and seizures. Despite the constitutional preference for searches conducted pursuant to a warrant, both the United States Supreme Court and the Mississippi Supreme Court have recognized certain exceptions to the warrant requirement. See Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); Watts v. State, 196 So.2d 79, 86-87 (Miss. 1967). A voluntary consent to a search is one of the specifically established exceptions. See Davis v. United States, 328 U.S. 582, 593-94, 66 S.Ct. 1256, 90 L.Ed. 1453 (1946); Quan v. State, 185 Miss. 513, 520, 188 So. 568, 569 (1939). Though it is evident that a defendant may waive his right and consent to a search, the Mississippi Supreme Court at one stage disagreed with the federal definition of voluntary consent.
¶ 48. The United States Supreme Court considers the voluntariness of a consent to search under a totality of the circumstances. Schneckloth v. Bustamonte, 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The State must demonstrate that the consent was not the result of duress or coercion. Id. at 248, 93 S.Ct. 2041. Although a defendant’s knowledge of his right to refuse a warrantless search is a factor to be taken into account, the State is not required to demonstrate such knowledge as a prerequisite to establishing voluntary consent. Id. at 249, 93 S.Ct. 2041. The Mississippi Supreme Court held that the Mississippi Constitution affords greater protection than the United States Constitution to an individual subject to a warrantless, consensual search. Penick v. State, 440 So.2d 547, 550 (Miss.1983), relying on Miss. Const. Art. 3, § 26. In Penick, the Court concluded that under the Mississippi Constitution proof beyond a reasonable doubt was required that an individual was aware of his right to refuse, before consent to a search could be found to be a knowledgeable waiver. Id. at 551.
¶49. The supreme court subsequently discussed Penick at length and found only that “consent is not valid where the con-senter is impaired or has a diminished capacity.” Jones v. State ex rel. Missis *294 sippi Dep’t of Pub. Safety, 607 So.2d 23, 28 (Miss.1991). The defendant, and not the State, bore the burden of establishing that he was impaired or had a diminished capacity. Id. Absent a showing by the defendant of such impairment or lack of capacity, the court held that it would apply the same test for valid consent as the federal standard. Id. The court unequivocally concluded that the “State is not required to demonstrate knowledge.” Id. Thus the Penick rule was significantly relaxed.
¶ 50. The court’s conformity with the federal standard for determining whether the consent was voluntary is further evidenced by the recent case of Graves v. State, 708 So.2d 858 (Miss.1997). The court quoted Jones to hold that there was no need for the State to show knowledge of the right to refuse. Id. at 863. The defense must show impaired consent or diminished capacity. Id. In essence, it is presumed that a request from police as opposed to a demand is sufficient for a defendant to know that he has a choice. Only if there is proof that a particular defendant has less than normal ability to reason will the State’s obligation to prove knowledge arise. See also Gazaway v. State, 708 So.2d 1385, 1388-89 (Miss.Ct. App.1998) (recognizing limitation on Pen-ick requirements).
¶ 51. Magnusen never claimed that he had suffered from an impairment or had a diminished capacity. He admitted that he consented to the State’s procurement of hair and blood samples and only alleged that he was not informed of the right to refuse such a request. The State offered the testimony of Detective Danny Holloway, who testified that he fully informed Magnusen of his rights including his right to refuse. Magnusen denies this. The trial court evaluated the testimony and the evidence under the totality of the circumstances. The court considered Magnusen’s age, the time of the search, and the fact that Magnusen had been informed of Miranda rights. After weighing the evidence, the court held that Magnusen had validly consented. We find no error.
V. FAILURE TO SUPPRESS THE TESTIMONY OF EXPERT WITNESS
¶ 52. Prior to the commencement of the trial, the defense counsel objected to the State calling Dr. Moran as a witness. Dr. Moran, an emergency room physician, examined the victim and performed a sexual assault kit. Although the State listed Dr. Moran as a witness and provided the defense with his reports prior to trial, the State failed to furnish the defense with a copy of Dr. Moran’s curriculum vitae. Magnusen argued that the State’s violation of the discovery order prevented his ability to cross-examine Dr. Moran adequately. Without the curriculum vitae, Magnusen claimed that he was not able to verify the doctor’s training and expertise.
¶ 53. The trial court requested that the defense suggest a curative action to the discovery violation. The defense asserted that there was not an adequate curative measure other than to grant a mistrial. In response, the State offered to furnish the defense with a copy of Dr. Moran’s resume and to make the doctor available for the defense to interview. The trial judge noted that he could not “anticipate what need or benefit would flow as a result of the furnishing” of the resume. The court subsequently granted the defense a continuance until the following- morning and ordered the State to promptly furnish the defense with a copy of Dr. Moran’s resume.
¶ 54. The next morning the defense counsel informed the court that the State had complied with the court’s order. However, the defense attorney renewed his motion for a mistrial, or in the alternative to strike the doctor as a witness, based on the assertion that he was not prepared to cross-examine the witness. He also argued that he was not able to verify the doctor’s qualifications. The *295 State advised the court that it had not only-provided the defense with the doctor’s resume, but it had also attempted to make the doctor available for the defense. The State noted that the defense declined to interview the doctor. Accordingly, the trial court permitted the doctor to testify and imposed a $500 sanction against the State’s attorney. Dr. Moran testified the following day.
¶ 55. Rule 9.04 of the Uniform Circuit and County Court Rules sets forth the appropriate procedure and remedies for the trial court to consider in resolving discovery violations. URCCC 9.04(1). The Rule provides that if a “party has failed to comply with an applicable discovery rule ... the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, or enter such other order as it deems just under the circumstances.” URCCC 9.04(1).
¶ 56. Evidentiary rulings are within the broad discretion of the trial court and will not be reversed absent an abuse of discretion. Coleman v. State, 697 So.2d 777, 784 (Miss.1997). We find no clear abuse of discretion. The factual omission was the resume of the doctor. The court ordered the resume to be provided. The resume was delivered; the defense was given a continuance until the following day. The doctor did not testify until the following day. The defense knew for some time prior to trial of Dr. Moran’s identity and the substance of his testimony. The defense was given the opportunity to interview Dr. Moran and to voir dire him prior to the court’s acceptance of him as an expert, but the defense declined. We find these to be appropriate rulings and there was no error.
VI. WEIGHT OF THE EVIDENCE
¶ 57. Magnusen asserts that the trial court erred in denying his motion for a new trial because the verdict was against the overwhelming weight of the evidence. He contends that the only physical evidence that linked him to the crime scene was a pubic hair that was obtained in violation of his Fourth Amendment right. Additionally, Magnusen claims that he was not the perpetrator of the crimes because the victim informed the investigating officer that she had bitten through the attacker’s sock-covered arms. When Magnusen was arrested, he argues that there was no evidence that he suffered from such a bite. Magnusen argues that the State failed to establish beyond a reasonable doubt that he committed the crimes, and thus, the verdict is contrary to the weight of the evidence.
In reviewing the decision of the trial court, this Court views all of the evidence in the light consistent with the jury verdict. Strong v. State, 600 So.2d 199, 204 (Miss.1992). A motion for a new trial should only be granted to prevent an unconscionable injustice. McClain v. State, 625 So.2d 774, 781 (Miss.1993). Accordingly, we will reverse and remand for a new trial only upon reaching the conclusion that the trial court has abused its discretion in failing to grant a new trial. Herring v. State, 691 So.2d 948, 957 (Miss.1997).
¶ 58. In the face of Magnusen’s assertions, the jury heard the testimony from several witnesses who testified to facts that would indicate Magnusen’s guilt. The officer responding to the scene observed an- individual matching the victim’s description at a nearby bar. The individual fled when the officer attempted to stop and question him. After reviewing several photographs at the police station, the officer identified the individual as Magnusen. The victim also positively identified Mag-nusen in a photographic line-up, in a subsequent line-up, and at the trial. Furthermore, a pubic hair recovered from the victim’s bedroom exhibited the same characteristics as Magnusen’s hair. None of this evidence was incredible, unbelievable, or substantially impeached. The jury was *296 entitled to conclude that the proof established guilt of the crimes.
¶ 59. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY OF CONVICTION OF COUNT I, BURGLARY OF AN OCCUPIED DWELLING AND SENTENCE OF EIGHT YEARS TO RUN CONCURRENTLY WITH COUNT III; COUNT II, AGGRAVATED ASSAULT, AND SENTENCE OF FIFTEEN YEARS TO RUN CONSECUTIVELY TO COUNT IV; COUNT III, ROBBERY, AND SENTENCE OF FIFTEEN YEARS TO RUN CONSECUTIVELY TO COUNT II; COUNT IV, RAPE, AND SENTENCE OF FORTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO HARRISON COUNTY.
BRIDGES, C.J., McMILLIN, P.J., and COLEMAN, DIAZ, HERRING, HINKEBEIN, KING and PAYNE, JJ., concur.
THOMAS, P.J., not participating.

. In a letter dated August 27, 1992, to an assistant district attorney in Wisconsin, the Harrison County District Attorney noted that the Wisconsin Probation Parole Office was currently completing a pre-sentence report on Magnusen. Although the State asserted that the Wisconsin officials had requested information on Magnusen, the letter is silent to any such request. The district attorney stated that he had "encountered no individual anymore dangerous than David Magnusen.” The remainder of the letter then set forth the alleged criminal history of Magnusen.

. On November 17, 1995, Magnusen filed a designation of expert. Magnusen listed Charles Linck as an expert with respect to trace evidence including, but not limited to, analysis of hair evidence. The court papers reveal that the court approved the payment of $925 in consultation fees.