# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-KA-01831-SCT

*ROBERT POOLE, JR.*

*a/k/a ROBERT REED, JR.*
*v.*
*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 10/18/2000 |
| TRIAL JUDGE: | HON. ANDREW C. BAKER |
| COURT FROM WHICH APPEALED: | TALLAHATCHIE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DAVID L. WALKER |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JOHN R. HENRY |
| DISTRICT ATTORNEY: | ANN LAMAR |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/04/2002 |
| MOTION FOR REHEARING FILED: | 4/15/2002; denied 6/6/2002 |
| MANDATE ISSUED: | 6/13/2002 |

### BEFORE SMITH, P.J., WALLER AND COBB, JJ.

### WALLER, JUSTICE, FOR THE COURT:

¶1. James L. Goodman, Robert Poole, Jr., a/k/a Robert Reed, Jr. ("Robert"), Willie C. Reed (Robert's brother), and Carnell Bradford were indicted for the robbery and capital murder of Gene "Preacher" Lilly in the Circuit Court of the First Judicial District of Tallahatchie County, Mississippi. Robert was tried separately and convicted of capital murder and conspiracy to commit robbery. He was sentenced to life in prison for the capital murder and five additional years for conspiracy to commit robbery, said five years to run consecutively to the life sentence. After considering Robert's claims pertaining to an inflammatory remark made during voir dire, violation of speedy trial, and erroneous rulings on jury instructions, we affirm the conviction and sentence.

## FACTS

¶2. On January 15, 1999, sixty-nine year old Gene "Preacher" Lilly was robbed and killed at his home near Tippo in Tallahatchie County, Mississippi. In the days preceding his murder, Lilly had planned to open a store and had talked to several individuals about doing so. Doyle Staten owned "Staten's Food Mart," a short order café/gas station/convenience store in Tallahatchie County that was frequented by Lilly sometimes three or four times a day. Staten had told Lilly that he would need small bills and change to open

a store. Staten had served Lilly supper late in the afternoon before his murder and noticed Lilly's front pockets bulging with money he needed to open his store the next day.

¶3. That same evening, Goodman, a serviceman for Tallahatchie Valley, had gone from Charleston to Westbrook's, a club and store in the southern part of Tallahatchie County, west of Tippo, to put in a box.[1] Goodman had picked up Robert and his brother Willie in Charleston as he was leaving to go to Westbrook's. Robert and Goodman were seen in Goodman's white blazer at Westbrook's. While they were at Westbrook's, Robert told his cousin Earnest Lee Taylor, "We're fixing to go over here and go make a hit," and, "Well we're going to go rob a little white man." The group visited another nightclub called Eddie B's, located north of Tippo, where Robert asked Goodman to let his cousin Bradford ride back to Charleston with them, to which Goodman agreed.

¶4. The group traveled the back way to Charleston because they had been warned that the Highway Patrol was at Cowart. The back way took them by Lilly's house. Robert said he knew where some money was. Goodman asked, "Where?" to which Robert Reed answered, "Lilly." They parked in a curve near Lilly's house. Goodman, Bradford, and Robert went up to the house to get the money. Bradford tried to open a side window but could not get in. Bradford finally gained entrance through a back window and opened the back door for Robert and Goodman. As the group entered, they found Lilly lying on the couch. Bradford picked him up and threw him on the floor. Robert and Bradford tied Lilly up with a sheet. Robert then placed a pillow over Lilly's head. Goodman became scared and ran back to the truck. A couple of minutes later Bradford and Robert came running back to the Blazer. Bradford and Robert gave Goodman $50.00.

¶5. Steven Hayne, M. D., a forensic pathologist called by the State, testified that he found multiple injuries to Lilly's body, including bruises about the eye, cheek, lower lip, and over upper chest extending to the left shoulder. Defensive posturing injuries were present. Dr. Hayne testified that the cause of death was suffocation and burking (compression of the chest) caused by someone standing, kneeling, or sitting on Lilly's chest as indicated by the fractures to the ribs.

## DISCUSSION

### I. WHETHER THE TRIAL COURT ERRED IN FAILING TO GRANT ROBERT'S MOTION FOR A MISTRIAL AFTER PROSPECTIVE JUROR DOGAN STATED IN VOIR DIRE THAT ROBERT TERRORIZED HER DURING HER CHILDHOOD.

¶6. Robert argues that he was entitled to a mistrial because of comments made during voir dire by Ms. Dogan, one of the venirewomen. The record reflects the following exchange during voir dire:

THE COURT: Okay. Okay. Then you don't need to respond further, Ms. Skinner. Anyone else have any connection or -- you see what we're getting in and what we run into.

MS. DOGAN: 56.

THE COURT: Fifty what?

MS. DOGAN: 56.

THE COURT: 56. Ms. Dogan?

MS. DOGAN: Yes, sir.

THE COURT: Which of those that I called out do you have some connection with?

MS. DOGAN: I was just sitting here looking at Robert Poole (Robert Reed) and how he used to terrorize me when I was little.

THE COURT: Okay. You don't need to respond further, Ms. Dogan.

MR. WALKER: I move for a mistrial, Your Honor, based upon her comments.

THE COURT: Yes , sir. I'll give you a chance to put it on the record later, but that's -- you don't need to respond further, Ms. Dogan. Anyone else have any connection with -- with Goodman, Willie Reed or Carnell Bradford?

(NO RESPONSE.)

THE COURT: Okay, Ms. Dogan, you can be excused at this time and, Ms. Skinner, you can be excused at this time.

¶7. The granting of a mistrial is governed by URCCC 3.12, which states:

Upon motion of any party, the court may declare a mistrial if there occurs during the trial, either inside or outside the courtroom, misconduct by the party, the party's attorneys, or someone acting at the behest of the party or the party's attorney, resulting in substantial and irreparable prejudice to the movant's case.

Upon motion of a party or its own motion, the court may declare a mistrial if:

1. The trial cannot proceed in conformity with law; or

2. It appears there is no reasonable probability of the jury's agreement upon a verdict.

¶8. In *Evans v. State*, 725 So. 2d 613, 649 (Miss. 1997), this Court stated:

The decision to declare a mistrial is within the sound discretion of the trial judge. See *Arizona v. Washington*, 434 U.S. 497, 512, 98 S. Ct. 824, 834, 54 L. Ed. 2d 717 (1978); *Grandberry v. Bonner*, 653 F.2d 1010 (5th Cir. 1981). To find error from a trial judge's failure to declare a mistrial, there must have been an abuse of discretion. *Jones v. State*, 398 So. 2d 1312, 1318 (Miss. 1981); *Schwarzauer v. State*, 339 So. 2d 980, 982 (Miss. 1976).

The court shall declare a mistrial upon the defendant's motion if there occurs during the trial an error or legal defect in the proceeding, or conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to the defendant's case.

725 So. 2d at 649.

¶9. Robert made a timely objection moving for a mistrial. The trial court allowed argument later, outside the presence of the jury. Robert's argument for mistrial was based on his belief that the jury was tainted or inflamed by the comment. He did not ask that the other prospective jurors be instructed to disregard the

statement. The record reflects that the trial court quickly interrupted Ms. Dogan. After voir dire was completed, the trial court examined the jury and asked whether there was anything that would affect their ability to be fair and impartial. We find that, because the court conducted an examination, and because of the brevity of the comment, Ms. Dogan's comment was not substantially prejudicial so as to warrant a mistrial. Thus, the trial judge did not abuse his discretion in denying Robert's motion for a mistrial.

## II. WHETHER ROBERT'S RIGHT TO A SPEEDY TRIAL WAS VIOLATED.

¶10. Robert argues that the State failed to bring him to trial within the 270-day period prescribed in Miss. Code Ann. § 99-17-1 (2000), as amended, and, as a result, his case should be dismissed. The State responds that delay was attributed to the defendant's actions.

¶11. The record discloses the following pertinent dates:

| | |
|---|---|
| 8/24/1999 | arrest |
| 9/23/1999 | indictment |
| 12/9/1999 | waiver of arraignment |
| 12/21/2000 | motion to exclude or limit photographs filed |
| 1/31/2000 | first trial date |
| 1/31/2000 | motion for severance filed |
| 12/31/2000 | reciprocal discovery filed |
| 3/1/2001 | order granting motion for trial severance and mental health examination |
| 3/3/2001 | order reversing ruling on defendant's motion to exclude photographs |
| 7/10/2001 | order creating special term of court |
| 7/12/2001 | defendant's demand for speedy trial |
| 7/27/2001 | motion to dismiss - violation of 270-day rule |
| 10/16/2001 | actual trial date |

### A. The Statutory Right

¶12. The analysis for the 270-day rule from Miss. Code. Ann. § 99-17-1, is very fact specific and relies heavily on whether the prosecution or defense caused the delays. *Sharp v. State*, 786 So. 2d 372, 376 (Miss. 2001). Section 99-17-1 provides that, "[u]nless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned." ¶13. The *Sharp* analysis for the 270-day rule is as follows:

> Thus, the reason for the delay is as important as who is responsible. The first step is to calculate the total number of days between arraignment (the statute clearly states that is when the right attaches) and the actual trial. For this purpose, "[t]he date of arraignment is not counted but the date of trial is and weekends are counted unless the 270th day is a Sunday."

*Sharp*, 786 So. 2d at 378 (citations omitted).

¶14. Under this analysis the time between the waiver of arraignment and the actual trial date was approximately 277 days. The 277 days is past the 270 day limit, but to see if the 270-day rule has been violated, each delay should be examined separately to determine whether the prosecution or defense is responsible for the delay. *Baine v. State*, 604 So. 2d 258, 264 (Miss. 1992).

¶15. Fifty-three days elapsed between the wavier of arraignment (12-9-1999) and the first trial (1-31-2000). The time required for defendant to prepare for trial is left up to the sound discretion of the trial judge, taking into consideration the particular circumstances of the case. *Wiley v. State*, 582 So. 2d 1008, 1012 (Miss. 1991). This 53-day period is definitely not overly lengthy when the complexities of the case are considered: a capital murder, conspiracy, and robbery with three co-defendants.

¶16. Robert filed motions for severance, mental health examination and reciprocal discovery on the first trial date (January 31, 2000). These late-filed motions show that Robert was not prejudiced by the delay, and that, in actuality, he was not even ready for trial and needed extra time to prepare. The trial court ruled on Robert's motions on March 1, 2000, and a new trial day was set for September 11, 2000. The days between the first trial and the time the motions were granted toll the 270-day period. These days are charged against Robert because he requested the severance, mental examination and reciprocal discovery. Motions made and granted on behalf of the defense are charged against them. *Herring v. State*, 691 So. 2d 948, 953 (Miss. 1997); *Jasso v. State*, 655 So. 2d 30, 35 (Miss 1995). Also, the delay can be attributed to the complexity of the crime, the number of defendants involved and a congested docket, all of which is viewed as good cause if a continuance is actually granted for those reasons. *Johnson v. State*, 666 So. 2d 784, 791 (Miss. 1995), *overruled on other grounds*, *Hennington v. State*, 702 So. 2d 403, 414-15 (Miss. 1997); *State v. Harrison*, 648 So. 2d 66, 69 (Miss. 1994).

¶17. The delay in Robert's case is a result of his own actions and inactions. When a defendant causes a delay, he cannot complain and obtain relief. *Perry v. State*, 419 So. 2d 194, 199 (Miss. 1982). The 29-day period from the filing of the motions to the ruling on the same should be subtracted from the 277-day delay, leaving a 248-day delay. This length of time does not violate the 270-day rule, and thus this issue is without merit.

### B. The Constitutional Right

¶18. In examining a constitutional challenge, there is no specified time period that renders the delay unconstitutional. Instead we use a test set out by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). *See Brengettcy v. State*, 794 So. 2d 987, 992 (Miss. 2001). The four factors of the test include: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant. *Barker*, 407 U.S. at 530, 92 S. Ct. at 2182; *Brengettcy*, 794 So. 2d at 992. No one factor is dispositive, and the balancing test is not restricted to the *Barker* factors, so other factors may be considered.

#### *1. The length of the delay.*

¶19. Robert was arrested on August 24, 1999. The trial was on September 11, 2000. The length of the delay was not quite 13 months. In *Smith v. State*, 550 So. 2d 406, 408 (Miss. 1989), we recognized that a delay of eight months or more is presumptively prejudicial. If the delay is not presumptively prejudicial, there is no need to consider the other *Barker* factors. *Handley v. State*, 574 So. 2d 671, 677 (Miss.

1990). Since there were 384 days from the arrest to his date of trial, prejudice is presumed, and the other factors from the *Barker* test must be considered. *Spencer v. State*, 592 So. 2d 1382, 1387 (Miss. 1991).

### 2. *The reason for the delay.*

¶20. The second factor in the *Barker* analysis calls for an inquiry into the cause of the delay. Delays caused by a party count against that particular party. *Brengettcy*, 794 So. 2d at 993. *See also Beavers v. State*, 498 So. 2d 788, 791 (Miss. 1986), *overruled on other grounds, State v. Ferguson*, 576 So. 2d 1252, 1255 (Miss. 1991). The risk of non-persuasion is on the prosecution, and where no reason is mentioned in the record the factor weighs in favor of the defendant. *Beavers*, 498 So. 2d at 790-91. The State bears the risk of non-persuasion regarding the reason for delay and must show whether the defendant caused the delay or that good cause existed for the delay. *Fleming v. State*, 604 So. 2d 280, 299 (Miss. 1992).

¶21. Robert was arrested on August 24, 1999. The first trial date was set for January 31, 2000. The day of the trial Robert filed a motion for severance, reciprocal discovery and mental health examination, which were ruled upon on March 1, 2000. Robert's delinquence in making these motions is the major reason for the delay. Therefore, this delay counts against Robert, not the State.

### 3. *The defendant's assertion of his right.*

¶22. Robert made a demand for a speedy trial on July 12, 2000. Also, on that same date, Robert filed a motion to dismiss on the basis that his right to a speedy trial had been violated. A defendant "has no duty to bring himself to trial. . . . Still he gains far more points under this prong of the *Barker* test where he has demanded a speedy trial." *Jaco v. State*, 574 So. 2d 625, 632 (Miss. 1990). However, a demand for a speedy trial is distinct from a demand for dismissal due to violation of the right to a speedy trial. *Perry v. State*, 637 So. 2d 871, 875 (Miss. 1994); *see also Adams v. State*, 583 So. 2d 165, 169-70 (Miss. 1991).

¶23. The record shows that Robert made a demand for a speedy trial and later a motion to dismiss on the basis that his right to a speedy trial had been violated. He correctly asserted his right before trial. This factor weighs in Robert's favor.

### 4. *The prejudice to the defendant.*

¶24. The last part of the *Barker* analysis, prejudice to the defendant, has two aspects: (1) actual prejudice to the accused in defending his case, and (2) interference with the defendant's liberty. *Perry*, 637 So.2d at 876. The U. S. Supreme Court has identified three main considerations that need to be addressed in determining whether the accused has been prejudiced by the delay: (1) preventing "oppressive pretrial incarceration;" (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532, 92 S. Ct. at 2182; *Brengettcy*, 794 So. 2d at 994.

¶25. Robert was in jail because of a parole violation and does not argue prejudice from being incarcerated. He does argue that the memories of two of the witnesses were not sharp due to the long delay and cites *Vickery v. State,* 535 So. 2d 1371 (Miss. 1988), in support of his argument. *Vickery*'s fact situation is different, however. There, the defendant had been subject to rape and other terrible circumstances while he was incarcerated. In the case at bar, Robert was already in jail because of a parole violation. And his late-filed motions contributed to the delay and the witnesses' loss of memory, if any.

¶26. In conclusion, we are troubled by lengthy delays in bringing defendants to trial. However, in the case at bar, Robert was responsible for most of the delay. He fails to show any real prejudice as he did not state or prove any exculpatory evidence which would have been available had he been brought to trial earlier. For these reasons we find that this issue is without merit.

### III. JURY INSTRUCTIONS.

#### A. Whether the trial court erred in refusing Robert's instruction on manslaughter.

¶27. Robert argues that he should have been allowed to have a manslaughter instruction. The State responds that there was no evidentiary basis for such an instruction. The standard of review for challenges to jury instructions is as follows:

> Jury instructions are to be read together and taken as a whole with no one instruction taken out of context. A defendant is entitled to have jury instructions given which present his theory of the case, however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.

*Smith v. State*, 802 So.2d 82, 88 (Miss. 2001) (citations omitted). Jury instructions should be given only when evidence in the case being tried supports them. *Walker v. State*, 740 So. 2d 873, 888 (Miss. 1999). We have held that a lesser-included offense instruction is authorized if a rational or a reasonable jury could find the defendant not guilty of the principal offense in the indictment, but guilty of the lesser-included offense. *Pleasant v. State*, 701 So. 2d 799, 804 (Miss. 1997).

¶28. Jury instruction D-6 reads as follows:

> If you find the State has failed to prove, beyond a reasonable doubt, any one or more of the elements of the crime of murder, you will find the Defendant not guilty of this original charge and proceed with your deliberations to decide whether the State has proven, beyond a reasonable doubt, all of the elements of the lesser offense of manslaughter.

> After your deliberations on the lesser offense, if you find the evidence that on or about March 1, 1999 that the Defendant killed Gene Lillie in the heat of passion and without the authority of law and that Gene Lillie was a living human being, then you shall find the Defendant guilty of the crime of Manslaughter.

> If the State has failed to prove, beyond a reasonable doubt, any one or more of the elements of the crime of petit larceny, then you shall find the Defendant not guilty. . . .

¶29. In this case there is no basis for manslaughter, and there is no evidence to support a manslaughter instruction. Robert argues that he was entitled to have the jury instructed on the different defense theories. However, in absence of evidence, he is not entitled to such an instruction.

#### B. Whether the trial court erred in granting the State's accomplice instruction.

¶30. Robert played a part in the crime, and the accomplice instruction was properly granted.

#### C. Whether the trial court erred in granting a capital murder instruction.

¶31. Robert argues that, because his co-defendants, through deals with the State, pled guilty to manslaughter, there was no basis for the capital murder instruction given at his trial. The pleas of co-defendants are not relevant to Robert's case. Furthermore, Robert does not cite any authority in support of this contention.

### D. Whether the trial court erred in granting the instruction on the elements of capital murder.

¶32. Evidence showed that Robert was part of the conspiracy to rob and kill Lilly and that Lilly was killed in the commission of a robbery. The evidentiary basis justifying a capital murder instruction was adequate, and the instruction was proper.

### E. Whether the trial court erred in refusing Robert's peremptory instruction.

¶33. In *Stevens v. State*, 2002 WL 307730 (Miss. 2002), we stated how requests for directed verdicts and peremptory instructions should be considered: "The legal sufficiency of the State's evidence may be tested by a motion for a directed verdict, a request for a peremptory instruction and a motion for a JNOV; the standard of review of each is essentially the same." *Id.* at \*11 (citations omitted).

¶34. The standard of review for the denial of motions for new trial and for directed verdict is as follows:

> [W]e must, with respect to each element of the offense, consider all of the evidence--not just the evidence which supports the case for prosecution--in the light most favorable to the verdict. The credible evidence which is consistent with the guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.

*McDowell v. State*, 807 So.2d 413, 425-26 (Miss. 2001) (citations omitted).

¶35. Robert was seen at Westbrook's store where he was overheard telling a cousin, "We're fixing to go over there and go make a hit." And he was also heard saying, "Well, we're going go rob a little white man." Testimony was given that Robert said he knew where some money was, traveled with the group to Lilly's house, went into Lilly's house, tied Lilly up and put a pillowcase over his head. Dr. Hayne testified that Lilly had been tied about his upper extremities and stated that the cause of death was suffocation and burking (compression of the chest). There was substantial evidence to support the guilty verdict. The trial court correctly denied the JNOV motion and refused Robert's requested peremptory instruction. This issue is without merit.

### CONCLUSION

¶36. For these reasons, the judgment of the Circuit Court of the First Judicial District of Tallahatchie County is affirmed.

¶37. **COUNT I: CONVICTION OF CONSPIRACY TO COMMIT ROBBERY AND SENTENCE OF FIVE YEARS AS A HABITUAL OFFENDER IN THE CUSTODY OF THE**

**MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT II: CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SAID SENTENCES SHALL RUN CONSECUTIVELY.**

**PITTMAN, C.J., SMITH, P.J., COBB, DIAZ, EASLEY AND GRAVES, JJ., CONCUR. McRAE, P.J., CONCURS IN RESULT ONLY. CARLSON, J., NOT PARTICIPATING.**

1. Although it is not clear from the record, "Tallahatchie Valley" is presumed to be Tallahatchie Valley Electric Power Association and the "box" is apparently some type of electrical installation. The record does not reflect whether this was a regular service call or on his own time; although, since it was at night and Goodman testified that the white blazer used that evening was his personal vehicle, the Westbrook project appeared to be done on his own time.