582 So.2d 1008 (1991)
Rufus WILEY
v.
STATE of Mississippi
No. 90-KA-0218.
Supreme Court of Mississippi.
June 5, 1991.
*1009 Leonard H. Rosenthal, Natchez, for appellant.
Mike C. Moore, Atty. Gen., John R. Henry, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and PRATHER and McRAE, JJ.
PRATHER, Justice, for the Court:
Rufus Wiley appeals his conviction for armed robbery with a firearm under Miss. Code Ann. § 97-3-79 (Supp. 1990), in the Circuit Court of the Sixth Judicial District of Adams County. Wiley was sentenced to twenty (20) years in the Mississippi Department of Corrections. Finding that there was no violation of Wiley's constitutional right to a speedy trial, nor prejudice to him by his being seen momentarily by some of the jurors in shackles, this Court affirms the conviction.

I. STATEMENT OF THE CASE
About 7:30 on the evening of August 4, 1988, in Natchez, Mississippi, Rufus Wiley approached Varnado Rshon Cage at a nightclub, showed him a gun, and asked him if he wanted to go and "knock something off with him." Cage agreed, and the two started walking, arriving at Wiley's apartment where Cage was told to wait. Wiley left and came back in a green Monte Carlo. The two then began to drive around Natchez. As they were riding, they passed a Pizza Hut Restaurant and decided that it was the place that they would "knock off." They parked the car in a nearby parking lot and walked toward the Pizza Hut.
Upon arriving at the Pizza Hut, Cage looked in to see if there was someone that knew Wiley inside. Cage informed Wiley that such a person was inside, and Wiley then put a stocking mask over his face. The two then entered the Pizza Hut, and while Wiley waited in a little hallway near the restrooms, Cage approached the cash register and asked for some change. With the cashier distracted, Wiley came to the cash register, pointed the gun, and informed the cashier that it was a holdup. The cashier opened the cash register, and the money ($1,070.00) was put in a brown paper bag brought in by Cage. Once they had the money, Wiley ordered that the phones be pulled out of the walls. The two then ran from the Pizza Hut and back to their car. Four days later Cage was picked up by the police and confessed to the crime. This led to the indictment of Wiley on November 14, 1988, and his arrest on November 18, 1988. Wiley was later released on bond.
On February 21, 1990, the day before the trial, Wiley came before the court and was arraigned. A motion to dismiss was made on the basis that the State failed to provide Wiley with a speedy trial under Miss. Code Ann. § 99-17-1 (1972). The court overruled the motion, finding that the numerous delays and the appointment of the various attorneys was no fault of the State, *1010 and that the delay beyond the 270 days was caused either by Wiley or by events beyond the State's control.
The trial began on February 22, 1990, and the trial judge ordered that Wiley be brought over to the courtroom. While the court waited for Wiley, the jurors were given a recess. During this short break, some of the jurors were outside of the courtroom in the hall when Wiley was brought to the courtroom in shackles; the shackles were removed before Wiley entered the courtroom. Counsel for Wiley requested that the court exclude from the jury panel all of the jurors who saw Wiley being brought to the courtroom in restraints. After brief argument and a discussion off the record, the trial court overruled the motion, finding that the action was not prejudicial, as defense counsel had already mentioned to the jury that Wiley was in jail.
The trial proceeded and Wiley was found guilty. He appeals and assigns two errors: (1) that he was denied his constitutional right to a speedy trial by the delay of more than 460 days from the date of the arrest, and (2) that he was prejudiced by the fact that some of the jurors witnessed him being brought to the courtroom in shackles and the trial court erred in not dismissing those jurors.

II. DISCUSSION

A. The Speedy Trial Issue
The constitutional right to a speedy trial is guaranteed by both the United States Constitution and the Mississippi Constitution.[1] There is also a statutory right which is specifically provided in Miss. Code Ann. § 99-17-1 (Supp. 1990), stating that:
Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned.
The chronology of events between the indictment and the trial is very important in determining whether Wiley's right to a speedy trial was violated. An indictment was entered against Wiley on November 17, 1988. He was arrested on the indictment on November 18, 1988. After his indictment and arrest, Wiley hired George F. West, Jr. as his attorney. West was subsequently suspended from the practice of law. On April 26, 1989, a letter was sent to Wiley by the District Attorney's Office advising him that his trial date was set for May 22, 1989, and that they were aware that he was without legal representation. The letter advised Wiley that if he was without representation, he needed to get a lawyer immediately or the court would appoint an attorney for him. On May 9, 1989, William C. McGehee, Jr. was appointed by the court as counsel for Wiley. No trial took place on May 22.
On August 2, 1989, an order of continuance was filed at the request of Wiley, continuing the cause until the following term of court. No reason was given for the continuance. On September 11, 1989, an order was filed setting the case for trial on December 6, 1989. On September 21, 1989, a motion to withdraw as counsel was filed by Attorney McGehee, requesting that he be allowed to withdraw and that the court appoint new counsel. In his motion, McGehee based his motion on Wiley's hostility toward him. Wiley refused to meet with him to discuss the case, and he was unable to communicate with Wiley in order to prepare a proper defense. The court granted McGehee's motion allowing him to withdraw and appointed Patricia Dunmore as new counsel.
Dunmore was released as counsel for Wiley, because of a possible conflict, by order of the court on September 28, 1989. The court then appointed Stanley Merritt as counsel for Wiley. No trial was held on December 6; the record does not indicate why the trial was not held. On December 12, 1989, Merritt requested to withdraw as counsel for Wiley, because he had prosecuted *1011 Cage, the co-defendant, who would testify against Wiley, in Youth Court. On December 14, 1989, a second continuance was ordered at the request of Wiley; again the record does not indicate why the continuance was granted. The court granted Merritt's motion to withdraw on February 7, 1990, and appointed his present counsel L.H. Rosenthal. Wiley was arraigned on February 21, 1990, and went to trial on February 22, 1990.
Wiley's trial occurred 460 days after his arrest and only one day after his arraignment. There was no violation of § 99-17-1, the statutory right to a speedy trial, as the trial occurred only one day after the arraignment. Compare Gator v. State, 402 So.2d 316, 319 (Miss. 1981); Nations v. State, 481 So.2d 760 (Miss. 1985). However, this Court has made it clear that compliance with § 99-17-1 does not necessarily mean that a defendant's federal and state constitutional right has been respected. Wiley also alleges that his constitutional right to a speedy trial has been denied.
Unlike the statutory right, which attaches upon arraignment, the constitutional right attaches at the time that the defendant became an accused for speedy trial purposes. Perry v. State, 419 So.2d 194 (Miss. 1982); Baker v. McCollan, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).
Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), established that once the constitutional right to a speedy trial has attached, a balancing test, weighing the conduct of both the prosecution and the defendant, is applied to determine whether the right has been denied. This balancing test identifies four factors that are helpful in determining whether a person's constitutional right to a speedy trial has been denied. Those factors are: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) prejudice to the defendant. Neither of the factors, standing alone, is dispositive. But they are all to be considered together in the context of the surrounding circumstances. Barker, 407 U.S. at 530-33, 92 S.Ct. at 2192-93. This Court relies heavily on the application of the Barker balancing test.

1. Length of Delay
According to Barker,
[t]he length of the delay is to some extent a trigger mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the impression of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case ...
Barker, 407 U.S. at 530, 92 S.Ct. at 2191.
The total length of delay in this case, from the arrest on the indictment to the date of the trial, was 460 days. However, Wiley moved for two continuances to the next regular term of court during this period between the indictment and the trial. A continuance granted to a defendant is counted differently from a continuance granted to the State. Any delay as a result of action by the State, without "good cause" causes the time to be counted against the State. A delay caused by the actions of the defendant, such as a continuance, tolls the running of the time period for that length of time, and this time is subtracted from the total amount of the delay. Flores v. State, 574 So.2d 1314, 1318 (Miss. 1990).
Calculations based on the time of the continuances and the terms of the Adams County Circuit Court,[2] show that the time lost due to the continuances granted *1012 Wiley was 181 days.[3] Subtracting the 181 days lost, due to the continuances from the 460 days of total delay, the amount of delay remaining after the continuances granted to Wiley is 279 days. A delay of eight months or longer is presumptively prejudicial. Flores, 574 So.2d at 1322; Smith v. State, 550 So.2d 406, 408 (Miss. 1989) (citations omitted). The length of delay in this case is sufficient to warrant an examination of the remaining factors, but is not conclusively weighted against the State.

2. Reason for the Delay
In discussing the reason for the delay, the United States Supreme Court stated in Barker that
[c]losely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant ...
Barker, 407 U.S. at 531, 92 S.Ct. at 2192.
Because the burden is on the State to provide a defendant with a speedy trial, the State bears the concomitant burden of showing that either the delay was caused by the defendant or that the delay was for a good cause. Where the State is unable to do either one, then this factor must be weighed against the State. Smith, 550 So.2d at 409.
In this case, there were no deliberate attempts by the State to cause a delay to hamper Wiley's ability to prepare a defense. The State contends that the numerous changes in counsel, four to be exact, caused the delay. Through no fault of Wiley's, his first attorney was suspended from the practice of law. However, the withdrawal of Attorney McGehee can be directly attributed to Wiley, as he was hostile toward McGehee and uncooperative, causing the withdrawal. The subsequent attorneys, Dunmore and Merritt, withdrew due to previous connections with the case or with the co-defendant. The withdrawal of attorneys was the cause of this delay. Compare Nations, 481 So.2d at 762.
After each withdrawal, the trial court was obligated to provide Wiley with new counsel. Appointments were made speedily on the same day that the withdrawal was approved. However, the trial court also had to allow time for the appointed attorney to familiarize himself with the case and prepare a defense. The delay caused by each withdrawal was necessary to provide Wiley with competent counsel and allow counsel reasonable time to familiarize himself with the case and prepare for trial. Any attempt by the State to expedite the trial could have resulted in prejudice to Wiley. Considering the delay in the light of the surrounding circumstances, the delay created by the appointments of counsel were necessary to provide Wiley with adequate representation and a fair trial. These factors were beyond the control of the State, and were for good cause. The delay cannot be weighed against the State.

3. Defendant's Assertion of His Right
The duty is on the State to insure that a defendant receives a speedy trial. However, a defendant has some responsibility to assert his right to a speedy trial. Flores, 574 So.2d at 1323. Wiley did not assert his right to a speedy trial until the day before the trial. However, this is understandable to some extent and is no fault of Wiley, due to the fact that Wiley was *1013 practically without representation because of the changes in his attorney. Compare Barker, 407 U.S. at 531, 92 S.Ct. at 2192 ("The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay ..."). This fact should not be weighed against either Wiley or the State because of the circumstances.

4. Prejudice to the Defendant
This Court has stated that an affirmative showing of prejudice is not absolutely necessary to prove a denial of the constitutional right to a speedy trial. Flores, 574 So.2d at 1323; Trotter v. State, 554 So.2d 313 (Miss. 1989). However, a showing of prejudice adds weight to a claim of a denial of the right to a speedy trial. In Vickery v. State, 535 So.2d 1371 (Miss. 1988), this Court in considering this factor, stated that
[p]rejudice is assessed in light of the interest of the defendant which the right to a speedy trial is designed to protect: 1) prevention of oppressive pre-trial incarceration 2) minimization of anxiety and concern of the accused and 3) limitation of the possibility of impairment of defense. Hughey v. State, 512 So.2d 4, 11 (Miss. 1987) citing Barker, 407 U.S. at 532-33, 92 S.Ct. at 2193, 33 L.Ed.2d at 118.
Vickery, 535 So.2d at 1377.
There is no evidence in the record to establish that Wiley was in any way prejudiced by the delay. He was out on bond for most of the period; his arrest on another charge was close to his trial date. Therefore, there was no oppressive pre-trial incarceration. There is no evidence of any anxiety caused by the delay; nor is there any evidence of the delay affecting any of the witnesses or Wiley's ability to present his case. Under the circumstances, to force Wiley to be ready for trial without sufficient preparation may have prejudiced his case more than the delay did. This factor weighs neutrally toward each party.
Weighing all of the factors together, and the conduct of the State and Wiley, this Court holds that Wiley's constitutional right to a speedy trial was not denied. The length of the delay was 279 days, after taking out the days of delay caused by the continuances requested by the defendant. Much of the cause of the delay can be attributed to the five changes in Wiley's attorney. The delay was for good cause to allow his counsel sufficient time to prepare for trial, and without a showing of prejudice to the defendant. This assignment is denied on the basis of this factual determination. Perry v. State, supra.

B. Was Wiley Prejudiced Because Some of the Jurors Saw Him in Shackles?
Wiley contends that his right to a fair trial by an impartial jury was prejudiced when the jurors who saw him brought to the court room in shackles were allowed to sit on the jury and decide his case. The State argues that the occurrence was inadvertent, a "mere happenstance", and does not provide a ground for reversal.
In Rush v. State, 301 So.2d 297 (Miss. 1974), this Court stated that:
[i]t is a common-law right of a person being tried for the commission of a crime to be free form all manner of shackles or bonds, whether of hands or feet, when in court in the presence of the jury, unless in exceptional cases where there is evident danger of his escape or in order to protect others from an attack by the prisoner. Whether that ought to be done is in the discretion of the court based upon reasonable grounds for apprehension. But, if the right of the accused is violated, it may be ground for reversal of a judgment of conviction. Marion v. Commonwealth, 269 Ky. 729, 108 S.W.2d 721 (1937).
However, the failure, through an oversight, to remove handcuffs from a prisoner for a short time or any technical violation of the rule prohibiting shackling, not prejudicial to him, is not a ground for reversal. Marion, supra.

Rush, 301 So.2d at 300; See also Hickson v. State, 472 So.2d 379 (Miss. 1985).
In Lockett v. State, 517 So.2d 1317 (Miss. 1987), this Court applied the analysis in Rush to a situation very similar to that in this case. In Lockett, the defendant was *1014 brought about three feet into the courtroom, with handcuffs on, for only a few minutes. The trial judge noticed the handcuffs, and instructed that the defendant be returned to the corridor to have the handcuffs removed. The defendant was then escorted into the courtroom by the Sheriff and two other deputies. Because of the position of the jury panel and the defendant it was impossible for them to see what occurred. There was no evidence that the incident occurred intentionally. In Lockett, the incident was not viewed as prejudicial by this Court. Lockett, 517 So.2d at 1329-30. Where there is no evidence presented that any of the jury actually saw the defendant in shackles or handcuffs, then such a technical violation is harmless. Fisher v. State, 532 So.2d 992, 999 (Miss. 1988).
In this case, Wiley was brought shackled into the hallway outside the courtroom, while some of the jurors were outside in the hallway. The court clerk instructed that the shackles be removed. Wiley was not brought into the courtroom until the shackles were removed. The incident was not intentional, but was coincidental to the jury being out in the hallway. Counsel for Wiley moved that the jurors out in the hallway, who might have seen Wiley shackled, be removed from the jury. Counsel offered to voir dire the jurors to find out if any of them saw Wiley, but after a brief bench conference, no evidence was presented. The trial judge overruled the motion due to the previous reference to Wiley being held in jail.
Though counsel for Wiley offered to present evidence that he was seen shackled by some of the jury members, for some reason, which is not disclosed in the record, he did not present any such evidence. The circumstances of the case establish that the incident was purely coincidental. This technical violation could no more have prejudiced the jury than defense counsel's reference to Wiley being in jail. This assignment is without merit. The conviction is affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
NOTES
[1] The right to speedy trial is guaranteed in the Sixth and Fourteenth Amendments of the United States Constitution and in Article 3, Section 26 of the Mississippi Constitution of 1890.
[2] Miss. Code Ann. § 9-7-21 (1972) provides that the terms of court for the Adams County Circuit Court are "[o]n the fourth Monday of March, twenty-four days; on the first Monday of July, twelve days; on the first Monday of November, thirty-six days; and on the second Monday of May, twelve days, for civil business only." Continuance orders for Mr. Wiley were filed on August 17, 1989, and on December 15, 1989.
[3] The continuance filed on August 17, 1989 tolled the running of time until the beginning of the next regular term on November 6, 1989, amounting to approximately 81 days. The continuance filed on December 15, 1989, tolled the running of time until the beginning of the next regular term on March 25, 1990, amounting to approximately 100 days. The two continuances together give a total of 181 days to be subtracted from the 460 days between the arrest on the indictment and the trial. This is the calculation used by the Appellant, and it is not disputed by the State.